UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 4:10-CV-129-F

| | |
|---|---|
| FELICITY V. LITTLE,<br>　　　Plaintiff,<br><br>　　v.<br><br>STOCK BUILDING SUPPLY, LLC;<br>STOCK BUILDING SUPPLY<br>HOLDINGS, LLC; COOK AND<br>BOARDMAN, INC.; THE COOK AND<br>BOARDMAN GROUP, LLC; SBS<br>COMMERCIAL DOOR AND<br>HARDWARE, LLC; and SBS/MARTIN<br>ARCHITECTURAL PRODUCTS, LLC,<br>　　　Defendants. | <u>O R D E R</u> |

This matter is before the court for consideration of United States Magistrate Judge James E. Gates' Memorandum and Recommendation ("M&R") [DE-37] concerning the separate but functionally identical motions to dismiss filed by defendants (i) SBS Commercial Door and Hardware, LLC ("Commercial") [DE-19]; and (ii) Cook & Boardman, Inc., and The Cook & Boardman Group, LLC [DE-22] (collectively, "the Cook defendants").[1] Commercial and the Cook defendants ("the moving defendants") filed Objections to the M&R in one document [DE-40]; plaintiff, Felicity V. Little ("Ms. Little") responded [DE-41]. The matter is ripe for disposition.

## I. RELEVANT PROCEDURAL AND FACTUAL HISTORY

This court finds the procedural and factual history set forth in the M&R at pages 1 through 5 to be accurate according to the record then before the court, and accordingly adopts it herein.

---

[1] The Cook defendants, which are represented by the same counsel as Commercial, employ in their pleadings and memoranda an ampersand in their title rather than the word, "and."

A. Initiation of the Action

To summarize, Ms. Little filed a *pro se* Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC") on January 20, 2010, naming as her employer "Stock Building Supply," and listing the street address as "511 East Chatman [sic] Street, Cary, North Carolina 27511."[2] *See* EEOC Charge [DE-19.1]. Ms. Little alleged she was unlawfully terminated from her job on the basis of her sex on July 27, 2009, the day before she was scheduled to return to work after being on approved leave under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") following the birth of her child.

Through counsel, Ms. Little initiated the instant lawsuit in the Wake County, North Carolina, Superior Court on August 11, 2010, asserting claims for employment discrimination under Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); wrongful discharge and other violations of the FMLA, and a claim for wrongful discharge in violation of North Carolina public policy as stated in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. GEN. STAT. § 143-422.1, *et seq.*

The moving defendants removed the matter to this court on September 15, 2010, alleging federal question jurisdiction. *See* 28 U.S.C. § 1331. Ms. Little filed an Amended Complaint [DE-14] on October 25, 2010. Therein, she named the six above-captioned defendants and dedicated sixteen paragraphs to allegations concerning the citizenship and relationships of those defendants, *inter se*, and to Martin Architectural (the name of the entity for whom Ms. Little worked at the Cary, North Carolina address). Before April 2010, Martin Architectural allegedly was owned by SBS/Martin Architectural Products, LLC, together with a

---

[2] In fact, Martin Architectural's street address is "511 *Chatham* Street" in Cary. That address, and the telephone number Ms. Little listed on her EEOC charge, appear on a webpage resulting from a Google search of "martin architectural." *See* http://raleigh.citysearch.com/profile/6153067/cary_nc/martin_architectural_prod_inc.html (site last visited Oct. 28, 2011). Below the listed address on that page, there is a direct link to "STOCKSUPPLY.COM." *See id.*

2

group comprised of Stock Building Supply, LLC, Stock Building Supply Holdings, LLC, and Commercial (collectively "Stock Building").

By the time Ms. Little filed her initial timely Complaint, the Cook defendants allegedly had purchased both SBS/Martin Architectural Products, LLC, and Martin Architectural in April 2010, making the Cook defendants joint owners of Martin Architectural along with Stock Building. Thus, Ms. Little, through her counsel, named as defendants in her Amended Complaint those entities that she contends have and/or, at the time of the alleged discrimination in July 2009, had an ownership interest in Martin Architectural. Her attorney's choice of defendants in this litigation reflects his assessment of the corporate ownership structure, based on available information and projected liability, while Ms. Little's *pro se* EEOC charge named "Stock Building Supply" as the company for which she worked. Indeed, the allegations of the Amended Complaint state that the Cook defendants bought Martin Architectural (and its then-co owner, SBS/Martin Architectural Products, LLC) as a going concern *after* Ms. Little filed her EEOC charge. Ms. Little alleges that the Cook defendants' liability is as a "successor in interest," and in that role, it is her "employer."

B. Moving defendants' motions to dismiss

As noted, the moving defendants filed separate, but functionally identical, motions to dismiss pursuant to Federal Civil Rules 12(b)(1) and (6).[3] The moving defendants argued first that Ms. Little failed to allege facts in the Amended Complaint sufficient to state claims against them, necessitating dismissal pursuant to Rule 12(b)(6). Specifically, the moving defendants argued that Ms. Little had failed to allege sufficient facts to show that any of the moving defendants were her "employer" within the meaning of Title VII, the FMLA, or North Carolina common law, and therefore all her claims must be dismissed.

---

[3] The remaining defendants filed Answers denying liability.

The moving defendants next argued that, even if the Amended Complaint were to survive 12(b)(6) motions, it nevertheless failed to establish subject matter jurisdiction for the Title VII claim because Ms. Little failed to exhaust her administrative remedies, thus requiring dismissal of that claim pursuant to Rule 12(b)(1). The factual basis advanced for this argument was that Ms. Little never filed an EEOC charge naming the moving defendants and did not receive a Notice of Right to Sue regarding any of the moving defendants. *See* M&R p. 6.

The undersigned referred the motions to dismiss to Judge Gates for preparation of an M&R. Immediately thereafter, all defendants moved [DE-32] to suspend the deadlines set in the Order for Discovery Plan until after the disposition of the discovery motions. That motion was referred to Judge Gates for ruling.

C. The M&R

In the M&R, Judge Gates first addressed the moving defendants' Rule 12(b)(1) arguments. He recognized that under Title VII, a plaintiff's failure to exhaust her administrative remedies as to a particular defendant generally deprives the court of subject matter jurisdiction over a Title VII claim. M&R at p. 6. Thus, normally, a plaintiff may only bring a Title VII claim against a defendant who was named in a charge filed with the EEOC. Judge Gates also recognized, however, that courts have applied two exceptions to the naming requirement: the "substantial identity exception"–where a defendant in a Title VII suit not named in an EEOC charge is substantially identical to an entity named in the charge–and the "successor in interest" exception. *Id.* at pp. 7-8.

Accordingly, Judge Gates concluded that dismissal was inappropriate under Rule 12(b)(1) as to Commercial because Ms. Little sufficiently alleged facts to support the "substantial identity" theory. *Id.* at p. 9. With regard to the Cook defendants, Judge Gates relied on the "successor-in-interest" theory to conclude that Ms. Little alleged sufficient grounds to survive a Rule 12(b)(1) challenge to subject matter jurisdiction under Title VII. *Id.* at p. 10.

4

Therefore, he recommended at this early stage of the proceedings, the moving defendants' motions to dismiss for lack of subject matter jurisdiction be denied.

Judge Gates then addressed the moving defendants' Rule 12(b)(6) argument that Ms. Little failed to allege sufficient facts to show that any of the moving defendants was her "employer." He observed that courts have applied the "integrated employer" test when faced with the issue of whether multiple entities should be deemed a single employer for the purposes of federal civil rights lawsuits. M&R at p. 13. He also recognized that successors in interest to employers that have engaged in discrimination may be held liable. *Id.* at pp. 13-14. Finally, Judge Gates predicted that North Carolina state courts would apply similar principles to a wrongful discharge claim in violation of the public policy as expressed in the NCEEPA. *Id.* at p. 14.

Accordingly, he recommended that the moving defendants' motions to dismiss pursuant to Rule 12(b)(6) be denied. With regard to Commercial's Rule 12(b)(6) motion, Judge Gates observed that significantly more factual detail would be required in order to test Ms. Little's "integrated employee" theory on its merits, noting, "[i]t would be manifestly unjust to require plaintiff to plead facts to which she does not appear to have adequate access at this point." M&R at pp. 15-16. Judge Gates opined that for the same reasons dismissal was premature as to the Cook defendants, noting that allegations supporting a "successor in interest" status would have to be fleshed out in discovery, but that the Amended Complaint fairly alleged a plausible factual basis therefor. *Id.* at pp. 16-17.

Finally, Judge Gates ruled on all the defendants' joint motion to stay discovery [DE-32], denying it as moot. He ordered the parties to conduct their mandatory Rule 26(f) meeting no later than 14 days after entry of the order disposing of the dismissal motions and to file a discovery plan within 14 after the meeting.

5

D. The Objections

The moving defendants thereafter jointly filed their Objections [DE-40] to the M&R. Unlike the two dismissal motions and the M&R, the moving defendants' Objections Memorandum does not differentiate among the moving defendants or Ms. Little's three claims for relief, and does not purport to address the two 12(b) motions separately. The Objections Memorandum is bifurcated, instead, between, two[4] legal theories applied by Judge Gates in rendering his M&R, and it is his use of the legal theories to which the moving defendants object on the legal grounds that the Fourth Circuit Court of Appeals has not expressly applied the theories.

First, the moving defendants contend as to Commercial that the "substantial identity" exception does not apply to the Title VII naming requirement that " 'a civil action may be brought only "against the respondent named in the [EEOC] charge," ' " Objections [DE-40], p. 3 (quoting *Stevenson v. Bost*, No. 5:10-CV-487-FL, 2011 WL 2181735, at *5 (E.D.N.C. June 3, 2011).[5] Second, the moving defendants argue that Judge Gates improperly adopted a "successor-in-interest" theory of employer identity as to the Cook defendants, by virtue of their purchase of going-concern, Martin Architectural, from "Stock Building"[6] and co-owner, SBS/Martin Architectural Products, LLC, in April 2010. *Id.* at pp. 5-6. The moving defendants also appear to attack Judge Gates' application of the integrated employer test, and his

---

[4] The M&R actually mentions three theories.

[5] Inexplicably, the moving defendants argue that *all* of Ms. Little's claims must be dismissed for failure to exhaust administrative remedies. The exhaustion of administrative remedies requirement, however, is only applicable to Ms. Little's Title VII claim.

[6] "Stock Building" includes Stock Building Supply Holdings, LLC, Stock Building Supply, LLC, and moving defendant, SBS Commercial Door and Hardware, LLC. *See* Amended Complaint [DE-14], at ¶ 9.

6

prediction that North Carolina courts would apply both the integrated employer test and principles of successor liability.

In making these objections, the moving defendants contend that application of the "substantial identity" or "successor liability" theories by the district court is impermissible because no controlling Fourth Circuit Court of Appeal precedent exists for such application. They further contend that the Amended Complaint fails explicitly to allege that the defendants were Ms. Little's employer, that its allegations incorrectly describe agency and ownership interests among the Stock Building defendants, and generally that the Amended Complaint's allegations are "unsubstantiated legal conclusions," lacking any factual basis on which relief may be granted.

## II. STANDARD OF REVIEW

A district court may "designate a magistrate judge to submit . . . proposed findings of fact and recommendations for the disposition of a variety of motions." 28 U.S.C. § 636(b)(1)(B). The court then must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Upon review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### A. Subject Matter Jurisdiction

It is a fundamental rule that a court has "jurisdiction to determine [its] jurisdiction." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 27 (2d Cir. 2010). Federal subject matter jurisdiction is limited to actions in which the claim asserted by the plaintiff raises a federal question or in which there is diversity of citizenship between the plaintiff and the defendant. 28 U.S.C. §§ 1331, 1332. Federal question subject matter jurisdiction exists where the plaintiff alleges a violation of the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1) facially or factually. *See Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If the defendant presents a facial challenge by arguing the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if the defendant presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009). "[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Id.* at 193 (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009)). In both situations, the burden rests with the plaintiff to prove that federal jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The court credits Ms. Little's allegations in her Amended Complaint, and consults the public record, as suggested by the moving defendants, *see* Objections Memorandum [DE-40] at p. 6, to test the plausibility of those allegations. This compromise approach is appropriate in the instant context, as the moving defendants, whose "employer" status is at issue both as to subject matter jurisdiction and as a mixed question of law and fact central to Ms. Little's substantive claims, *see Vuyyuru*, 555 F.3d at 348, have not specified that they intend a factual attack but contend in part that Ms. Little's allegations are untrue. *The result may be different following full discovery.*

B. <u>Sufficiency of Allegations to State a Claim</u>

On a motion to dismiss pursuant to Rule 12(b)(6), the district court assumes the truth of all well-pleaded, non-conclusory facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S.

8

662, ___ ,129 S. Ct. 1937, 1949-50 (2009); *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010). However, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). While a court must accept the material facts alleged in the complaint as true, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim, *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1950.

The court has considered the M&R, the parties' arguments, the applicable statutes and case law, and the moving defendants' various filings with the North Carolina Secretary of State publically available on the official website cited in the Objections memorandum, [DE-40], p. 6, together with all the other relevant matters of record. Having done so, the court concludes, as did Judge Gates, that dismissal is not appropriate at this stage of the litigation. Accordingly, the court ADOPTS the M&R, with the following:

### MODIFICATIONS and CLARIFICATIONS

1. The moving defendants declare in a footnote to their Objections that "Defendants Stock Building Supply, LLC and Stock Building Supply Holdings, LLC, support Moving Defendants' Objections as stated herein to the Memorandum and Recommendation issued September 2, 2011." Objections [DE-40] p.1 n.1. *Neither of these Supply defendants has filed a timely objection to the M&R, however, and the court rejects the moving defendants' statement as effective to operate as such.*

2. The undersigned deems it unnecessary, in light of the detailed allegations contained in the Amended Complaint as elucidated in paragraph 8, below, to presume that the "SBS" in Commercial's full name stands for "Stock Building Supply." *See* M&R pp. 8-9. The undersigned declines to adopt such a presumption.

3. Then-Chief Judge Flanagan did not, in *Stevenson v. Bost*, No. 5:10-CV-487-FL, 2011 WL 2181735 (E.D.N.C. June 3, 2011), decline to apply a "substantial identity" theory because she deemed the theory unsound or unsanctioned by circuit precedent. She refused to apply it because the theory did not apply to the facts before her.

4. The well-pleaded Amended Complaint contains sufficient factual allegations pursuant to the dictates of *Twombly* and *Iqbal* to state claims for relief against both Commercial and the Cook defendants for purported violations of Title VII, the FMLA, and for wrongful discharge in violation of North Carolina's public policy stated in the NCEEPA. That the Fourth Circuit Court of Appeals has not had occasion to adopt or reject a particular legal theory in a published case does not prevent a district court from considering and applying the theory on appropriate facts in the first instance. The moving defendants' Objections to the proposed conclusion recommending denial of the Rule 12(b)(6) motions are **OVERRULED**.

5. The well-pleaded Amended Complaint also sufficiently alleges both Commercial and the Cook defendants are Ms. Little's "employer" for purposes of exhausting administrative remedies under Title VII under a "substantial identity" and a "successor in interest" theory, respectively. Those allegations are sufficient under Rule 12(b)(1) to establish subject matter jurisdiction over her Title VII claims. The moving defendants have not directed the court's attention to the authority for their position that the absence of controlling circuit precedent precludes a district court from applying a recognized legal theory to what the court deems an appropriate set of facts. The moving defendants' Objections to the proposed conclusion recommending denial of the Rule 12(b)(1) motions are **OVERRULED**.

6. To the extent the moving defendants' Objections could be interpreted as directed to the M&R's proposed application of an "integrated employer" theory to Commercial, they are **OVERRULED**.

8. In addition to the reasons set forth in the M&R, the court has identified further support for Ms. Little's theories.[7]

The moving defendants chide Judge Gates for failing to acknowledge "publicly available information, such as www.secretary.state.nc.us which shows that SBS Commercial Door was not formed until August 28, 2009[,] *after the events alleged in the Amended Complaint had occurred.* (Exhibit A)." Objections Memorandum [DE-40], p. 6 (emphasis in original). Attached to that Memorandum is Exhibit A, which the CM/ECF filer on behalf of the moving defendants designated as "NC Limited Liability Company Information." The document purports to be a printout of an untitled North Carolina Department of the Secretary of State website page, indicating that "SBS Commercial Door & Hardware, LLC's" Current-Active status was effective on "8/28/2009."

The court's independent search within the referenced www.secretary.state.nc website for "SBS Commercial Door" produced reports, filed August 28, 2009, indicating,

- on June 5, 2009, an agent for CT Corporation System had applied to the North Carolina Secretary of State to reserve the business entity name "SBS Commercial Door & Hardware, LLC";

- that entity was *"formed" on June 24, 2009*;

- the *sole member* of that limited liability company was "Stock Building Supply Holdings, LLC," the address for which was the same as that listed on the Application for Certificate of Authority for Limited Liability Company for "SBS Commercial Door & Hardware, LLC"; and

- the SBS Commercial Door entity's registered agent in North Carolina was "CT Corporation System," with a Fayetteville Street address in Raleigh.[8]

---

[7] The contents of this section are not to be construed as findings of fact, but reflect the undersigned's additional efforts to examine the plausibility of Ms. Little's allegations concerning the defendants' relationships, *inter se,* and to the entity, "Stock Building Supply," named in Ms. Little's *pro se* EEOC charge, as a result of the moving defendants' Objections and their explicit reference to "publicly available information."

[8] On August 28, 2009, SBS Commercial Door & Hardware, LLC, filed a Notice of Transfer of Reserved Entity Name with the Secretary of State indicating it transferred its

11

The court's independent search of the www.secretary.state.nc website for "SBS/Martin Architectural Products, LLC" yields results indicating,

- SBS/Martin also was *"formed" on June 24, 2009*;

- its *only* "current member" is "SBS Commercial Door & Hardware, LLC," with which it shares common mailing address;

- the SOSID numbers assigned by the Secretary of State to SBS/Martin Architectural Products, LLC, and SBS Commercial Door & Hardware, LLC, are two digits apart;[9] and

- "Corporation Service Company" is listed as SBS/Martin's registered agent in North Carolina, with a Hillsborough Street address in Raleigh, but a Change of Registered Agent form was filed in July 2010, naming National Registered Agents, Inc., on Penmarc Drive, Raleigh.

The upshot of the foregoing observations is that the inquiry appropriate to the motions now before the court is not whether the facts alleged in the Amended Complaint and inferences to be drawn therefrom are true; it is whether Ms. Little has alleged a sufficient factual ground for subject matter jurisdiction and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 559 U.S. at 570. Ms. Little's Amended Complaint sets out in dazzling detail, allegations – deemed true for purposes of the instant motions – of the named defendants' genealogy and interrelationships which tend to demonstrate how each named defendant purportedly is or might be identified as her "employer" by virtue of its current or former

---

reserved entity name to Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, NC [sic] 19808," and that the date of original application to reserve the "SBS Commercial Door & Hardware, LLC," name had been June 9, 2009. The court's independent internet inquiry revealed that that address in Wilmington, *Delaware*, is assigned to "remote agents" in that state bearing three different names, one of which is Corporation Service Company. *See* http://www.corp.delaware.gov/ragt-c.shtml (site last visited Oct. 28, 2011).

[9] SBS Commercial Door and Hardware, LLC's SOSID number is 1113361. *See* http://www.secretary.state.nc.us/corporations/Corp.aspx?PitemId=9134418.
SBS/Martin Architectural Products, LLC's SOSID is 1113363. *See* http://www.secretary.state.nc.us/corporations/Corp.aspx?PitemId=9134416. Sites last visited Oct. 28, 2011).

ownership interest in Martin Architectural. Additionally, the defendants' Financial Disclosure Statements filed herein pursuant to FED. R. CIV. P. 7.1 and Local Civil Rule 7.3 cast an even brighter beam on the Escher-esque[10] corporate structures of the companies that purportedly own or have owned Martin Architectural during the relevant time period.

## IV. CONCLUSION

Based on the foregoing, the court hereby ADOPTS the rationale of the M&R, as MODIFIED and CLARIFIED herein. The moving defendants' Objections [DE-40] are OVERRULED. The court hereby ORDERS that the functionally identical motions to dismiss [DE-19] filed by defendants SBS Commercial Door and Hardware, LLC, and [DE-22] filed by Cook & Boardman, Inc., and The Cook & Boardman Group, LLC, pursuant to Rule 12(b)(6) and/or Rule 12(b)(1), are DENIED.

In accordance with Judge Gates' ruling [DE-37] on the defendants' joint motion to stay discovery [DE-32], the parties must conduct their mandatory Rule 26(f) meeting no later than 14 days after the filing date of this order, and must file a discovery plan within 14 days after the meeting.

Finally, the Clerk of Court is DIRECTED to correct the divisional assignment and case number designation of this lawsuit. *See* Notice of Deficiency entered September 16, 2010.

SO ORDERED.

This the 28th day of October, 2011.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

---

[10] Maurits Cornelis ("M.C.") Escher was a Dutch graphic artist known for his "impossible constructions, explorations of infinity, architecture, and tessellations." *M.C. Escher*, http//en.wikipedia.org/wiki/M._C._Escher (site last visited Oct. 18, 2011).

13